IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| INTEGRATED ALARM SYSTEMS LLC, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. CIV-25-00283-JD<br>)<br>) |
| TYCO SAFETY PRODUCTS CANADA LTD, | )<br>)<br>) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant Tyco Safety Products Canada Ltd.'s ("Defendant") Motion to Dismiss and Memorandum in Support. [Doc. Nos. 9, 10]. Plaintiff Integrated Alarm Systems LLC ("Plaintiff") filed a Response. [Doc. No. 13]. Defendant filed a Reply. [Doc. No. 16].

### I. BACKGROUND

Plaintiff installs burglar and fire alarm systems and their component parts. [Doc. No. 1 ¶ 11]. Defendant designs, manufactures, and distributes component parts of burglar and fire alarm systems, including the PG9936 Wireless Smoke and Heat Detector. [*Id.* ¶ 12]. Anixter, Inc. resells component parts of burglar and fire alarm systems, including the PG9936 Wireless Smoke and Heat Detector. [*Id.* ¶ 13]. Plaintiff purchased the products at issue in this case from Anixter. [*Id.* ¶ 14]. Defendant designed, manufactured, and distributed the products at issue. [*Id.*].

Beginning in May 2022, Plaintiff's customers advised Plaintiff that the PG9936 Wireless Smoke and Heat Detectors that Plaintiff installed in their homes were erroneously transmitting smoke/heat signals to their home alarm systems, thereby activating their fire alarm siren and initiating a fire alert to their remote monitoring company. [*Id.* ¶ 15]. Plaintiff advised Defendant and Anixter of the false alarms its customers were experiencing, and representatives of Defendant, Anixter, and Plaintiff visited customers' homes to investigate the cause of the false alarms. [*Id.* ¶ 21]. Defendant and Anixter told Plaintiff that the PG9936 Wireless Smoke and Heat Detectors they sold Plaintiff were seventh generation and that they designed the seventh-generation devices to comply with changes to the UL standards set to go in effect in 2024. [*Id.* ¶ 22]. They further told Plaintiff that the seventh-generation devices had a defective component in the sensor, which caused the devices to erroneously transmit a smoke/heat signal to their home alarm systems. [*Id.* ¶¶ 23, 24].

Representatives of Anixter and Defendant told Plaintiff that they were aware of the defect and would compensate Plaintiff for the defective devices, as well as the costs associated with performing service calls to address the defective devices. [*Id.* ¶ 25]. They also told Plaintiff that they would place the sixth-generation devices back in production and provide them to Plaintiff for installation in their customers' homes. [*Id.*]. Plaintiff states that Defendant has not provided replacement devices for most of the defective devices that Plaintiff has placed in customers' homes and that Defendant has not compensated Plaintiff for its efforts to address the defective devices. [*Id.* ¶¶ 28, 29].

Plaintiff initiated this case, asserting causes of action against Defendant for negligence, breach of warranty, res ipsa loquitor, interference with a business relationship, false representation, special damages, and exemplary damages. [*Id.* ¶¶ 32–81].

Prior to this case, Plaintiff had a case in the Western District of Oklahoma against Defendant and Anixter. [Doc. No. 10 at 7].[1] On March 6, 2024, Plaintiff filed a stipulation of dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(ii), dismissing its claims without prejudice. [*Id.* at 8]. On March 5, 2025, Plaintiff filed the Complaint in this case. [Doc. No. 1].

Defendant moves the Court to dismiss Plaintiff's claims pursuant to Rule 12(b)(6). [Doc. Nos. 9, 10]. Defendant argues that (1) Plaintiff's claims are time-barred; (2) Plaintiff cannot state a claim for res ipsa loquitur because it is not an independent cause of action and the defective detectors were not exclusively in Defendant's control; (3) Plaintiff fails to state a claim for interference with a business relationship because Plaintiff does not allege facts that demonstrate Defendant acted with malicious intent; (4) Plaintiff does not state a claim for false representation because Plaintiff fails to meet the requirements for pleading a fraud claim in accordance with Rule 9(b) and Plaintiff does not plead detrimental reliance; (5) the economic loss rule bars Plaintiff's negligence claim; and (6) Plaintiff fails to state a claim for breach of implied warranty because

---

[1] The Court uses page numbering from the CM/ECF stamp at the top of the filing on the district court docket.

Plaintiff is not the ultimate consumer. [Doc. No. 10 at 11–25]. The Court addresses each of these arguments below.

## II.   STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a complaint does not need detailed factual assertions, a pleading that offers only "labels and conclusions" or "pleads facts that are merely consistent with a defendant's liability" will not suffice. *Id.* (internal quotation marks and citation omitted). The burden is on the plaintiff to plead factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In evaluating a Rule 12(b)(6) motion, the Court accepts all well-pled factual allegations as true and views the allegations in the light most favorable to the nonmoving party. *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010). Conclusory statements, however, are not entitled to the assumption of truth, and courts are free to disregard them. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

## III.   ANALYSIS

### A.   Plaintiff's claims are not time-barred.

The Court begins with Defendant's argument that Plaintiff's claims are time-barred. Defendant asserts that Plaintiff's "new" causes of action—causes of action

4

asserted here that Plaintiff did not assert in the prior case—are time-barred. [Doc. No. 10 at 11–13]. The basis for Defendant's argument is that the scheduling order in the prior case set the deadline to amend pleadings as December 5, 2023, and that Plaintiff's claims here somehow qualify as amended pleadings in the prior case. [*Id.* at 11]. Thus, Defendant argues Plaintiff must have good cause for failing to timely amend. [*Id.* at 11–12]. The Court must agree with Plaintiff that Defendant "failed to cite any authority which states a previously dismissed cause of action—dismissed via a joint stipulation—can impact what occurs in a refiled cause of action." [Doc. No. 13 at 10]. Accordingly, the Court finds Defendant's position that Plaintiff's claims are time-barred untenable.

Instead, as argued by Plaintiff, the Court looks to the Oklahoma savings statute to determine whether Plaintiff's re-filed case is timely. [*See id.* at 10–12]. The savings statute provides:

> If any action is commenced within due time, and a judgment thereon for the plaintiff is reversed, or if the plaintiff fail in such action otherwise than upon the merits, the plaintiff, or, if he should die, and the cause of action survive, his representatives may commence a new action within one (1) year after the reversal or failure although the time limit for commencing the action shall have expired before the new action is filed.

12 Okla. Stat. § 100. "[W]here an action is timely commenced and dismissed without prejudice upon plaintiff's motion prior to trial on the merits but after the statute of limitations has run, plaintiff may commence a new action within a year after such dismissal." *Powers v. Atchison, T. & S. F. Ry. Co.*, 1964 OK 116, ¶ 2, 392 P.2d 744, 746 (discussing a predecessor statute). When determining whether the new action is sufficiently related to the prior action in order to receive the benefit of the savings statute,

Oklahoma applies the transactional approach: "Oklahoma jurisprudence uses the *transactional approach* for its definition of a 'cause of action.' The operative event that underlies a party's claim delineates the parameters of his cause of action. This conceptual approach ensures that litigants will be able to assert different theories of liability without violating the purposes of the statute of limitations." *Chandler v. Denton*, 1987 OK 38, ¶ 12, 741 P.2d 855, 862–63.

In its Reply, Defendant does not dispute the application of the savings statute, nor does it assert Plaintiff's causes of action do not rely on the same operative events as its prior causes of action. [*See* Doc. No. 16]. In fact, Defendant states that Plaintiff's Complaint is based on the "same operative set of facts" as its previous complaint. [Doc. No. 10 at 8 ("While the Refiled Complaint is based upon the same operative set of facts as the original Complaint and repleads the same negligence and breach of warranty causes of action, there are a few notable differences from the original Complaint.")]. Accordingly, the Court concludes that the savings statute applies and that Plaintiff's claims were timely filed.

### B. Res ipsa loquitur is not an independent cause of action under Oklahoma law.

The Court next turns to Defendant's arguments regarding Plaintiff's res ipsa loquitur claim. Defendant first argues that Oklahoma law does not recognize res ipsa loquitur as an independent cause of action. [Doc. No. 10 at 13–14]. The Court agrees.

In Plaintiff's Complaint, it asserts both causes of action of negligence [Doc. No. 1 ¶¶ 32–34] and res ipsa loquitur [*id.* ¶¶ 45–47]. However, under Oklahoma law which

6

applies in this diversity case, res ipsa loquitur is an "evidentiary rule . . . to aid the plaintiff in making out a *prima facie* case of negligence in circumstances when direct proof of why the harm happened is beyond the power or knowledge of the plaintiff." *Smith v. Hines*, 2011 OK 51, ¶ 21, 261 P.3d 1129, 1136; *see also Curtis v. Crop Prod. Servs., Inc.*, No. CIV-13-986-R, 2014 WL 12730325, at *6 (W.D. Okla. Sept. 29, 2014) ("*Res ipsa loquitor* is not a theory of recovery, but rather it is an evidentiary doctrine that permits the jury to infer the existence of negligence."). Accordingly, Plaintiff cannot assert an independent cause of action for res ipsa loquitur as it is a theory under which it can pursue its negligence claim. The Court dismisses Plaintiff's independent claim for res ipsa loquitur.

### C. Plaintiff states a claim for interference with a business relationship.

The Court next addresses Defendant's argument that Plaintiff fails to state a claim for interference with a business relationship. Defendant argues that Plaintiff has not plausibly alleged facts that demonstrate Defendant acted with malice. [Doc. No. 10 at 16–17].

The elements of an interference with business relationship claim are (1) Defendant interfered with a business or contractual right; (2) the interference was malicious and wrongful and was neither justified, privileged nor excusable; and (3) the interference proximately caused damage. *Mac Adjustment, Inc. v. Prop. Loss Rsch. Bureau*, 1979 OK 41, ¶ 5, 595 P.2d 427, 428. "The element of malice, for malicious interference, is defined as an unreasonable and wrongful act done intentionally, without just cause or excuse."

7

*Tuffy's, Inc. v. City of Okla. City*, 2009 OK 4, ¶ 14, 212 P.3d 1158, 1165.[2] Defendant asserts that in order to show malice, Plaintiff must plead facts demonstrating "the purpose of the tortfeasor's act, and their motive must include a desire to interfere and disrupt the others' prospective economic business advantage." [Doc. No. 10 at 16 (emphasis omitted) (quoting *Loven v. Church Mut. Ins. Co.*, 2019 OK 68, ¶ 21, 452 P.3d 418, 426)]. The Court notes, however, that is not the exclusive way in which to establish the interference was malicious or wrongful. A plaintiff may satisfy this element by showing that "the tortfeasor 'acted with the intentional purpose to interfere or in bad faith' or the 'interference was done with an improper, wrongful, or malicious motive.'" *Brown v. Dynamic Gaming Sols., LLC*, No. CIV-22-917-D, 2023 WL 1788540, at *3 (W.D. Okla. Feb. 6, 2023) (quoting *Loven*, 2019 OK 68, ¶ 22, 452 P.3d at 426)].

Defendant argues that Plaintiff fails to plead facts demonstrating malice because Plaintiff has not pled that Defendant intentionally manufactured, distributed, and sold a defective device for the purpose of interfering with Plaintiff's business relationships. [Doc. No. 10 at 16 ("Integrated's interference claim fails in the absence of any basis or explicit allegation that Tyco acted with malicious intent to harm Integrated's business

---

[2] The Court notes that Plaintiff labeled its claim as "interference with a business relationship." [Doc. No. 1 ¶¶ 48–55]. Plaintiff characterizes Defendant's interference as intentional and wrongful. [*Id.* ¶ 50]. The Oklahoma Supreme Court has stated that "[t]he terms 'malicious interference,' 'intentional interference,' and 'tortious interference' with contract or business relations have been used interchangeably in Oklahoma jurisprudence, and do not designate distinct torts . . . ." *Tuffy's*, 2009 OK 4, ¶ 15, 212 P.3d at 1165. Thus, to the extent caselaw refers to "malicious interference," it is applicable to Plaintiff's claim as Plaintiff casts the claim as one for intentional interference with a business relationship.

8

relationships with its customers by designing, manufacturing, distributing and selling the defective Detectors.") (internal quotation marks and alteration omitted)]. Plaintiff, however, states that the act of interference it pleads is *not* Defendant's design, manufacture, and distribution of the defective device but is instead the act of failing to publicly state the seventh-generation device was defective:

> The purpose for Tyco's improper conduct was to avoid liability for the defect. The result of Tyco's conduct was to place Plaintiff in the position of being privately told by Tyco that the Smoke Detectors were defective only for Tyco to then state publicly they were not. The purpose of Tyco's conduct was a disruption in the business relationship Plaintiff had with the homebuilders and homeowners where the defective Smoke Detectors were installed. Tyco's act of telling the public that the Smoke Detectors were defect-free caused Plaintiff's customers to be given the false impression that Plaintiff was to blame for the Smoke Detectors malfunctioning.

[Doc. No. 13 at 21–22; *see also* Doc. No. 1 ¶ 50]. Defendant does not respond to this argument in its Reply. [*See* Doc. No. 16 at 2].

Drawing all inferences in favor of Plaintiff, the Court concludes, at this pleading stage, Plaintiff's allegation regarding Defendant's public denial that the product was defective satisfies the requirement that Defendant acted maliciously or wrongfully because Defendant sought to evade responsibility and wrongfully placed the responsibility for the defective product upon Plaintiff. The Court concludes that these facts, taken as true, satisfy that Defendant "acted with the intentional purpose to interfere or in bad faith or the interference was done with an improper, wrongful, or malicious motive." *Dynamic Gaming Sols., LLC*, 2023 WL 1788540, at *3 (internal quotation marks and citation omitted). Accordingly, the Court concludes Plaintiff has adequately pled an interference with business relationship claim.

Defendant also argues that, if the Court concludes that Plaintiff has adequately pled an interference with business relationship claim, the economic loss doctrine should preclude this claim. [Doc. No. 10 at 17]. The Court addresses this argument below in connection with its analysis of the economic loss rule relating to Plaintiff's negligence claim.

### D.  Plaintiff fails to plead its false representation claim with particularity.

Defendant next argues that the Court should dismiss Plaintiff's false representation claim because Plaintiff fails to plead fraud with the specificity required by Rule 9(b) and that, as pled, Plaintiff has not stated facts that demonstrate detrimental reliance. [Doc. No. 10 at 17–20 (citing Fed. R. Civ. P. 9(b)].

Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Federal caselaw has interpreted this rule as requiring a plaintiff to "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *In re Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991))].

Plaintiff's allegations of fraud do not meet this requirement. As the basis for its false representation claim, Plaintiff pleads two misrepresentations. First, Plaintiff states that "Defendant made material representations to Plaintiff and the public claiming the PG9936 Wireless Smoke and Heat Detectors were defect-free." [Doc. No. 13 at 22 (quoting Doc. No. 1 ¶ 56)]. Second, Plaintiff states that "Defendant now denies admitting

10

to Plaintiff that the PG9936 Wireless Smoke and Heat Detectors are defective presenting another misrepresentation made by Defendant." [*Id.* (quoting Doc. No. 1 ¶ 58)]. Plaintiff identifies the contents of the misrepresentations but does not state the time or place of the misrepresentations, the party making the misrepresentations, or the consequences of the misrepresentations. *See Koch*, 203 F.3d at 1236.

The Court agrees with Defendant that, as pled, Plaintiff does not state how it detrimentally relied upon the alleged misrepresentations. [*See* Doc. No. 10 at 19]. Plaintiff merely states that "Plaintiff, and other members of the public, acted in reliance upon Defendant's representation that the PG9936 Wireless Smoke and Heat Detectors were defect-free", and that "Plaintiff acted in reliance upon the representations made by Defendant that it would compensate Plaintiff for its efforts to deal with the defective PG9936 Wireless Smoke and Heat Detectors." [Doc. No. 1 ¶¶ 61, 62]. These allegations do not meet the heightened pleading requirement of Rule 9(b) because they do not demonstrate the consequences of Defendant's alleged fraudulent misrepresentation. The Court, accordingly, grants Defendant's Motion to Dismiss Plaintiff's false representation claim.

### E.    Plaintiff states a claim for breach of implied warranty.

The Court next turns to Plaintiff's breach of warranty claim. Defendant argues the Court should dismiss this claim because Defendant lacks privity with Plaintiff. [Doc. No. 10 at 22–25]. Plaintiff asserts a claim for breach of implied warranty under Oklahoma law, thus arguing that Defendant breached a warranty implied in the contract of sale of the defective devices. [*See* Doc. No. 13 at 28]. However, because Plaintiff did not

11

purchase the devices directly from Defendant, Plaintiff lacks privity of contract with Defendant. [*See* Doc. No. 10 at 23]. Defendant argues that Oklahoma law only allows the ultimate consumer to bring implied warranty claims against the manufacturer and has not extended that result to anyone in the vertical chain of distribution. [*Id.*]. Because Oklahoma law on this point is limited, the Court must examine the precise language of the relevant cases.

The Oklahoma Supreme Court first addressed the issue in *Old Albany Estates, Ltd. v. Highland Carpet Mills, Inc.*, 1979 OK 144, 604 P.2d 849. The plaintiff was an ultimate consumer who purchased a defective product through a third-party, who in turn purchased the product directly from the manufacturer. *Id.* ¶ 2, 604 P.2d at 850. The plaintiff sued the manufacturer for breach of implied warranties under the Uniform Commercial Code. *Id.* ¶ 4, 604 P.2d at 850–51. Determining that the Uniform Commercial Code was silent on vertical privity regarding implied warranties, the court held that "a manufacturer may be held liable for breach of implied warranty of merchantability or fitness for particular purpose under the Uniform Commercial Code without regard to privity of contract between the manufacturer and the ultimate buyer." *Id.* ¶ 12, 604 P.2d at 852. Accordingly, the Court concluded that the "[p]laintiff, being in the chain of distribution, may maintain a direct action against defendant to recover the benefit of his bargain . . . ." *Id.* Based upon its plain language, the Court does not interpret the court's holding in the limited way urged by Defendant. The Court interprets the holding as not requiring vertical privity between any plaintiff in the chain of distribution and the manufacturer in order to assert claims of implied warranties.

Although the court referred to the plaintiff as "the ultimate buyer," the court did not limit its holding to the ultimate consumer of the defective product. *See id.* Instead, the court determined vertical privity between parties was not a requirement for an implied warranty claim. *See id.*

The Oklahoma Supreme Court's decision in *Elden v. Simmons* supports the Court's interpretation that vertical privity is not a requirement for a breach of implied warranty claim asserted by anyone in the chain of distribution. 1981 OK 81, 631 P.2d 739. In that case, the Court again considered whether an ultimate consumer could bring a breach of implied warranty claim against the manufacturer. *Id.* ¶ 9, 631 P.2d at 742. Based upon *Old Albany Estates*, the court concluded that the plaintiff could bring such a cause of action, stating that "under the rationale of *Old Albany Estates* . . . the plaintiffs, as ultimate purchasers, may maintain a breach of warranty action against the manufacturer of the bricks, Acme Brick Company, even though no privity of contract exists between the plaintiffs and Acme Brick, as Acme is a manufacturer in the chain of distribution." *Id.* In support of its holding, the court stated as follows:

> **In reaching our holdings today, we note that the requirement of vertical privity as a prerequisite to suit on an implied or express warranty, both under the Uniform Commercial Code and outside the Code, is, given today's market structure, an antiquated notion.** A manufactured product placed in the chain of distribution may literally pass through dozens of hands before it reaches the ultimate consumer. When the product is found to be defective, it makes little sense to allow the ultimate consumer redress against his immediate vendors only. If such were the case, the consumer's immediate vendor, if he were to have the full benefit of his bargain, would have to, in turn, sue his immediate vendor, who would, in turn, have to sue his vendor, and so on up the chain, until the party ultimately responsible for placing a defective product in the market is reached. It defies common sense to require such an endless chain of

13

> litigation in order to hold the party at fault responsible. **For this reason, this Court, in *Old Albany Estates v. Highland Carpet Mills* . . . eliminated the requirement of vertical privity**, thus allowing ultimate consumers to bring direct breach of warranty actions against manufacturers of products which are allegedly defective.

*Id.* ¶ 10, 631 P.2d at 742 (emphasis added). The court referenced "the ultimate consumer" because the plaintiff in that case was, in fact, the ultimate consumer. *See id.* But the court's reasoning does not support limiting its holding to ultimate consumers because that would give rise to exactly the scenario the court criticizes as "def[ying] common sense"—Plaintiff would have to initiate "an endless chain of litigation" to hold Defendant responsible. *Id.*; *see also Patty Precision Prods. Co. v. Brown & Sharpe Mfg. Co.*, 846 F.2d 1247, 1254 (10th Cir. 1988) ("In our view, the broad-sweeping language used by the Supreme Court of Oklahoma in *Old Albany Estates v. Highland Carpet Mills* . . . reiterated and enlarged upon in *Elden v. Simmons* . . . rejected the majority view that a 'vertical' non-privity plaintiff, i.e., one who buys within the distributive chain but who does not buy directly from the defendant, cannot maintain an action for breach of implied warranty."); *Patty Precision v. Brown & Sharpe Mfg. Co.*, 742 F.2d 1260, 1263 (10th Cir. 1984) ("The parties are in agreement that *Old Albany* abolished the vertical privity requirement for implied warranties.").

For these reasons, the Court concludes that Oklahoma caselaw does not require vertical privity for Plaintiff to assert a claim of breach of an implied warranty against Defendant. Accordingly, the Court denies Defendant's Motion to Dismiss on this claim.

F.  **The economic loss doctrine precludes Plaintiff's negligence claim.**

Defendant next argues that the economic loss rule bars Plaintiff's negligence claim. [Doc. No. 10 at 20–22]. "The economic loss rule is a court-created doctrine that bars recovery under manufacturer's product liability for purely economic injury to the product itself." *Mills v. J-M Mfg. Co.*, 2025 OK 23, ¶ 15, 567 P.3d 385, 389 (citing *Waggoner v. Town & Country Mobile Homes, Inc.*, 1990 OK 139, ¶ 22, 808 P.2d 649, 653). Defendant asserts that this rule bars Plaintiff's negligence claim because Plaintiff "explicitly and exclusively seeks recovery for losses that are purely 'economic' in nature." [Doc. No. 10 at 20]. Plaintiff counters that the economic loss rule does not apply to negligence claims and is instead restricted to product liability claims. [Doc. No. 13 at 24].

Plaintiff correctly states that Oklahoma courts have applied the economic loss rule in products liability cases. *See Mills*, 2025 OK 23, ¶ 15, 567 P.3d at 389. The Oklahoma Supreme Court recently stated in *Mills* that they declined to extend the rule "beyond the context of products liability" like other jurisdictions have done. *Id.* ¶ 15 n.5, 567 P.3d at 389 n.5. In support of that statement, the court cited two cases, each applying the economic loss rule to negligence claims but not in the context of a negligence claim based upon a defective product. *See id.* (citing *Springfield Hydroelectric Co. v. Copp*, 172 Vt. 311, 315, 779 A.2d 67, 71 (2001) (applying the economic loss rule to a claim that a power purchase agreement was negligently distributed); *Ramerth v. Hart*, 133 Idaho 194, 197, 983 P.2d 848, 851 (1999) (applying the economic loss rule to a claim of negligently performed services)).

15

However, Oklahoma federal district courts have applied the economic loss rule to negligence claims that have "substantially the same sort of issue as is presented in a products liability suit." *Okla. Gas & Elec. Co. v. Toshiba Int'l Corp.*, No. CIV-14-0759-HE, 2016 WL 3659941, at *6 (W.D. Okla. July 1, 2016) (applying the economic loss rule to a negligence claim where "the dispute [was] centered on damage to a product and whether that damage is covered by a warranty"); *see also United Golf, LLC v. Westlake Chem. Corp.*, No. 05-CV-0495-CVE-PJC, 2006 WL 2807342, at *3 (N.D. Okla. Aug. 15, 2006) ("The reasoning of *Waggoner* applies to the full range of unintentional torts, precluding negligence or products liability claims when the UCC provides a comprehensive remedy for plaintiff's economic injury.") (citing *Waggoner*, 1990 OK 139, ¶¶ 20–21, 808 P.2d at 653).

The court's reasoning in *Waggoner* supports the federal district courts' application of the economic loss rule to negligence claims based upon defective products. The Oklahoma Supreme Court's reasoning on barring product liability claims seeking to recover only economic loss is as follows:

> This Court has long held that manufacturers' products liability should be distinguished from contractual liability. While the UCC does envision allowing recovery for personal injury and for property damage arising out of defectively manufactured articles, such recovery arises out of contractual relationships, express or implied. This contractual relationship, the sales contract, is also the basis for the recovery of a buyer's economic losses. In contrast, the economic expectations of parties have not traditionally been protected by the law concerning unintentional torts. These expectations have been safeguarded by commercial law principles.

*Waggoner*, 1990 OK 139, ¶¶ 19–20, 808 P.2d at 653 (citation modified). This rationale applies to negligence claims seeking economic damages based upon defective products.

16

As discussed above, Plaintiff has a remedy for its economic losses in the form of a breach of implied warranty claim against Defendant.[3]

Plaintiff, however, argues that, even if the Court finds the economic loss rule applies to its negligence claim, it seeks more than economic damages. [Doc. No. 13 at 28]. Plaintiff asserts that the economic loss rule does not prevent Plaintiff from recovering "the losses suffered by Plaintiff for more than a thousand service calls to address the defective Smoke Detectors, loss of profits, loss of reputation, loss of business value and exemplary damages." [*Id.*]. The Oklahoma Court of Civil Appeals has defined "economic loss" as "damages other than physical harm to persons or property." *Proe v. Diamond Homes*, 2025 OK CIV APP 18, ¶ 40, 574 P.3d 1, 15.[4] Plaintiff has not alleged property damage (other than damage to the defective products themselves) or personal injury. [*See* Doc. No. 1 ¶ 82]. Accordingly, the type of damages claimed by Plaintiff falls within the economic loss rule.

For the above reasons, the Court grants Defendant's Motion to Dismiss Plaintiff's negligence claim.

---

[3] The court's reasoning in *Waggoner* is not, however, equally applicable to Plaintiff's interference with a business relationship claim. *Waggoner* addresses that economic losses are not available in products liability claims because contract claims are available to protect the economic expectations of the parties. 1990 OK 139, ¶¶ 19–20, 808 P.2d at 653. As Plaintiff's interference with business relationship claim is an intentional tort, requiring a showing of malice, Defendant has not cited a rationale, or supporting caselaw, for applying the economic loss rule to this claim. [*See* Doc. No. 10 at 17]. Consequently, the Court allows the interference claim to proceed.

[4] The court also noted that "any property damage for which tort recovery can be had must be damage to property other than the property which is the subject of the contract." *Proe*, 2025 OK CIV APP 18, ¶ 40, 574 P.3d at 15.

## IV. CONCLUSION

For the reasons described above, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion to Dismiss. [Doc. Nos. 9, 10]. The Court GRANTS the Motion as it pertains to Plaintiff's res ipsa loquitur, negligence, and false representation claims.[5] The Court DENIES the Motion as it relates to other claims.

IT IS SO ORDERED this 9th day of February 2026.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

---

[5] While it harbors doubts about Plaintiff's ability to plead a false representation claim under the alleged facts, because the defect resulting in dismissal is a pleading deficiency, the Court dismisses Plaintiff's false representation claim without prejudice. The Court does not, however, consider the defects in Plaintiff's res ipsa loquitur and negligence claims to be curable and thus dismisses those claims with prejudice.

In its Response, Plaintiff requests leave to amend to cure any pleading deficiency. [Doc. No. 13 at 7, 24, 31]. But Plaintiff cannot seek leave to amend its Complaint in its response brief. *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."); LCvR7.1(c) ("A response to a motion may not also include a motion . . . made by the responding party."); LCvR15.1 (explaining that a party moving to amend a pleading must attach the proposed pleading as an exhibit to the motion); *see also Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 771 F.3d 697, 706 (10th Cir. 2014) ("We have recognized the importance of Fed. R. Civ. P. 7(b) and have held that normally a court need not grant leave to amend when a party fails to file a formal motion." (quoting *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999))).